IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| YVONNE D. NICKS, | ) |
| | ) |
| | ) |
| Plaintiff, | ) **JURY TRIAL DEMANDED** |
| | ) |
| vs. | ) |
| | ) |
| DAVID J. SHULKIN, M.D., | ) |
| SECRETARY of VETERAN AFFAIRS, | ) |
| DEPARTMENT OF VETERAN AFFAIRS, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW comes Plaintiff, Yvonne D. Nicks, by and through her attorney, and for her Complaint against Defendant David J. Shulkin, M.D., Secretary of Veteran Affairs, states as follows:

### I. INTRODUCTION

1.  This is a civil action arising under the laws of the United States and is brought pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, as amended, for relief for unlawful employment practices committed by the Defendant against Plaintiff, Yvonne D. Nicks, because of her disability and reprisal (prior EEO activity).

### II.  JURISDICTION and VENUE

2.  This Court has jurisdiction of this action under the laws of the United States, in particular the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and 28 U.S.C. §§ 1331 and 1343 (3) and (4).

3.  Venue is proper in this judicial district, the Eastern District of Missouri, because the employment practices hereinafter alleged to be unlawful were committed in the Eastern District of Missouri, Eastern Division.

4.  Plaintiff filed timely charges of discrimination with the Department of Veterans Affairs Regional Office in St. Louis, Missouri alleging discrimination by representatives of Defendant based on disability and reprisal.

5.  This action was commenced was within ninety (90) days of Plaintiff's receipt of a final agency decision.  Plaintiff has, accordingly, satisfied administrative, jurisdictional and all conditions precedent to the institution of this action.

## III.  PARTIES

6.  Plaintiff is a citizen of the United States and the State of Missouri of  presently residing in the County of St. Louis, Missouri, within the Eastern District of Missouri.

7.  At all times herein pertinent Plaintiff was employed by the Department of Veterans Affairs Regional Office located in St. Louis, Missouri in the position of Veterans Claim Examiner, Education Division.

8.  The United States Department of Veterans Affairs is an agency of the United States Government (hereinafter sometimes referred to as "the Agency).  Defendant David J. Shulkin, M.D., is the Secretary of the Department of Veterans Affairs.

## IV.  GENERAL ALLEGATIONS

9.  After Plaintiff became employed as a Veterans Claims examiner in the Education Division of the St. Louis Regional Office of the Department of Veterans Affairs on August 15, 2010, Plaintiff developed bilateral carpal tunnel syndrome and neuritis on

2

both hands and wrists, a medical condition causing impairment.

10.  On or about November 28, 2011, Plaintiff notified the Agency of the diagnosis of bilateral carpal tunnel syndrome and neuritis through submission of Agency Form WH-380E completed and executed by her treating physician, David Strege, M.D.  The completed form was directed to Agency representative Louise Wright.

11.  On December 22, 2011, Plaintiff underwent the first of three surgeries to treat the bilateral carpal tunnel syndrome and neuritis.  The symptoms associated therewith include pain and numbness of both hands increases with repetitive activity such as typing and keyboarding.

12.  Thereafter, Plaintiff had surgeries for her carpal tunnel syndrome  and neuritis on July 31, 2012, on March 29, 2013, and again in 2014.

13.  Plaintiff is an individual with a disability, as that term is defined in the  Rehabilitation Act, as amended, namely bilateral carpal tunnel syndrome and neuritis of the hands and upper extremities, as noted above, which substantially limits a major life activity including, but not limited to, working.

14.  At all times herein pertinent, was a qualified individual able to perform the essential functions of the position she held, Veterans Claims Examiner, with reasonable accommodation, as that term is defined in the Rehabilitation Act, as amended.

15. Beginning on or about November 28, 2011 and thereafter, Plaintiff made repeated requests to the Agency to accommodate her limitations due to her medical condition.  The limitations, which were certified by Plaintiff's treating physicians, involved repetitive activity utilizing the hands, in large part.

3

16.  Plaintiff's requested accommodations, as certified by her treating physicians, Including, but not limited to:

(a)  being allowed to type or keyboard at a slower pace, as pain permits;

(b)  change of work routine by taking regular breaks of 15 minutes every hour; and,

(c)  providing an ergonomic keyboard and keyboard tray set up with a mouse that fits the tray.

17.  The Agency was on notice of Plaintiff's disability, as set forth hereinabove.

18.  Plaintiff, through her treating physicians, also requested light duty for periods following her surgeries, and an ergonomic assessment and set up of her work station (including desk and chairs) by ergonomic professionals.

19. Regarding changes to Plaintiff's work routine,  on or about June 7, 2012 Plaintiff's treating physician recommended that the Agency accommodate Plaintiff by allowing a work load of 5 hours per day for 6 weeks and light duty until July 19, 2012.

20.  During the period of September 2013  through 2015 and thereafter, Plaintiff's treating physicians recommended that the Agency accommodate Plaintiff by limiting typing (data entry) to no more than 5 hours per shift.  The limitation as to the amount of typing activity per shift changed over time from 2 hours in 2013.  By May 25, 2016, Plaintiff's treating physician place no limitation on Plaintiff as to the amount of time she could type per shift, but only regular breaks of 15 minutes every hour from typing.

21.  The Agency failed and/or refused to adequately and fully accommodate Plaintiff's disability within a reasonable period of time as follows:  failing to consistently allow Plaintiff to type at a slower pace; repeatedly failing to observe the limitations as to

4

the number of hours of typing per shift, as recommended by treating physicians; repeatedly failing to observe the 15 minute breaks from typing each hour as recommended by treating physicians; and, failing to provide to Plaintiff the ergonomic keyboard, keyboard tray and professional ergonomic set up of other equipment (workstation with the desk and chair), as recommended by treating physicians.

## V.  FIRST CLAIM FOR RELIEF
### ISSUANCE OF WRITTEN WARNING and
### INITIATION OF PERFORMANCE IMPROVEMENT PLAN

22.  Plaintiff realleges and incorporates by reference the allegations contained within paragraphs 2 through 21 above, and further alleges as follows:

23.  On or about  September 2, 2014, Defendant, acting by and through Barbara Fix, Coach, to whom Plaintiff reported, issued a written warning of unacceptable performance to Plaintiff and placed Plaintiff under a Performance Improvement Plan (PIP) for a period of 90 days, until November 20, 2014.

24.  The stated reason for issuance of the written warning and placement under a Performance Improvement Plan was Plaintiff failed to meet the production standard of completing 900 end products monthly.

25.  On December 12, 2014, Coach Fix extended the Performance Improvement Plan for 60 additional days because Plaintiff failed to consistently complete 900 end products per month since placement under the PIP.

26.  On February 17, 2015, Coach Fix notified Plaintiff of the Agency's decision to extend the Performance Improvement Plan for an additional 120 days, ending on May 31, 2015 because Plaintiff had not consistently completed, on a monthly basis, 900 end

products. In particular, for the month of August 2015, Plaintiff completed 799 end products.

27.  On June 10, 2015,  Plaintiff was notified that she had met the production standard of 900 end products per month and was released from the production

28.  Thereafter, the Agency, on or about October 13, 2015, notified Plaintiff since her release from the Performance Improvement Plan, she failed to meet the production standard of 900 end products for the months of July and August 2015 and, as a result, Defendant would not allow Plaintiff to be considered for overtime.

29.  The Agency further notified Plaintiff  on October 13, 2015 that it was considering removal, reassignment or demotion of Plaintiff due to her failure to meet the standard of production for a period of one year from the date she was placed under the Performance Improvement Plan.

30.  Plaintiff was placed under a Performance Improvement Plan and threatened with removal, reassignment or demotion notwithstanding the Agency's failure to adequately and fully accommodate Plaintiff's disability within a reasonable time period, as she repeatedly requested, beginning in November 2011, as set forth hereinabove in paragraphs 15-16 and 19-21.

31.  Defendant, by its failure to adequately and fully accommodate Plaintiff's disability within a reasonable time period, as Plaintiff requested, so as to enable Plaintiff to perform the essential functions of the position she held, including meeting production standards, without jeopardizing her health, violated the Rehabilitation Act, as amended.

6

## VI.  SECOND CLAIM FOR RELIEF
## UNSATISFACTORY PERFFORMANCE RATING and PROPOSED REMOVAL

32.  Plaintiff realleges and incorporates by reference the allegations contained within paragraphs 2 through 31 above, and further alleges as follows:

33.  On or about October 23, 2015 Defendant, acting through Coach Barbara Fix, issued a Performance Plan and Appraisal covering the period from June 1, 2015 to September 30, 2015 in which she rated Plaintiff's overall performance as unsatisfactory.

34.  The unsatisfactory rating was based on Plaintiff's failure to meet the production standard of 900 end products per month for one year from the date of issuance of a Performance Improvement Plan, in particular, for the month of August 2015.

35.  By letter dated November 20, 2015, Defendant, acting by and through Jaquetta Parker, then Assistant Education Officer, proposed to remove Plaintiff from federal service because Plaintiff failed in August 2015 to meet the production standard of the equivalent of 900 end products and failed to meet this standard for one year since initiation of a Performance Improvement Plan on September 2, 2014.

36.  In her letter dated November 20, 2015, then Assistant Education Officer Jaquetta Parker advised Plaintiff of her right to reply to the proposed removal orally and/or in writing within 14 days from the date of receipt of the notice of proposed removal.

37.  On December 4, 2015 Plaintiff, through her counsel, made a written reply to Defendant's proposed removal of Plaintiff.  In her reply, Plaintiff challenged the proposed removal for the reasons, among other, that the Agency had failed to accommodate

7

Plaintiff's disability, as required by law, citing the failure to provide the carpal tunnel key

board and keyboard tray or reassign her to another position.

38.   The Agency violated the Rehabilitation Act, as amended, by rating Plaintiff's

performance as unsatisfactory and proposing to remove Plaintiff because of its failure to

adequately and fully accommodate Plaintiff's disability within a reasonable time period,

as Plaintiff requested, so as to enable Plaintiff to perform the essential functions of the

position she held, including meeting production standards, without jeopardizing her

health.

## VII.  THIRD CLAIM FOR RELIEF
## UNLAWFUL HARRASMENT AND REPRISAL

39.   Plaintiff realleges and incorporates by reference the allegations contained

within paragraphs 2 through 38 above, and further alleges as follows:

40.   During the course of responding to Plaintiff's repeated requests for accommo-

dation of her disability, the Agency engaged in unlawful conduct, including, but not

limited to the following.

(a)  On or about July 16, 2013, the Agency Local Reasonable Accommodation
Coordinator, James Thomas, failed to respond within a reasonable time to Plaintiff's
request for reassignment as an accommodation to her disability and, on or about
November 5, 2013 again on December 11, 2013, failed to respond in a timely manner to
Plaintiff's request for an update on her request for accommodation;

(b)  From December 13 through 17, 2013, and on January 2, 2014 Coach Fix required
Plaintiff to type more than the total number of hours per shift, as recommended by her
treating physician; change of work routine by taking regular breaks of 15 minutes every
hour;

(c)  In January 2014, Coach Fix refused to sign a form relating to continuation of

8

Plaintiff's temporary workers' compensation benefits while Plaintiff was recovering from surgery for carpal tunnel syndrome;

(d)  On or about February 1, 2014, Coach Fix, contrary to the recommendation of the treating physician, assigned Plaintiff to type more than the total number of hours per shift, as recommended;

(e)  On or about August 31, 2015, Coach Fix interrogated Plaintiff regarding the the number of EEO cases she had pending, reportedly for "tracking" purpose.

41.  The Agency engaged in the conduct described hereinabove in paragraph 40 because of Plaintiff's requests for accommodation of her disability and filing a prior complaint of discrimination against Ms. Fix, to whom Plaintiff reported, including a complaint alleging harassment by Fix filed on April 24, 2014, and had initiated on August 11, 2015 the EEO counseling process for another complaint of unlawful harassment by Fix.

42. As a direct and proximate result of the acts committed by the Defendant set forth hereinabove, Plaintiff has suffered emotional distress and mental anguish, including anxiety and depression, all to her general damage.

WHEREFORE, Plaintiff prays on all claims:

(1)  For a finding that Defendant has discriminated against Plaintiff in violation of her rights as alleged herein;

(2)  For a permanent injunction restraining and enjoining Defendant, its employees, agents and representatives from discriminating against Plaintiff as alleged herein;

(3) For an order directing Defendant to engage, as appropriate, in an interactive process in a timely manner to adequately and fully accommodate Plaintiff's requests for accommodation of her disability;

(4)  For an order directing Defendant to rescind the unsatisfactory performance rating issued to Plaintiff;

(5)  For a judgment for Plaintiff and against Defendant for any pecuniary loss or damage suffered by Plaintiff, with prejudgment interest, as a result of Defendant's conduct;

(6)  For an award of compensatory damages to compensate Plaintiff for the mental anguish and emotional distress and suffering Plaintiff has endured as a result of Defendant's discriminatory actions towards Plaintiff;

(6)  For an award to Plaintiff of all costs and expenses incurred in this action and attorney's fees; and,

(7)  For any other relief that this Court may deem just and proper;

(8)  A TRIAL BY JURY IS DEMANDED.

Date:  February 22, 2018            MELVIN L. RAYMOND

Melvin L. Raymond USDC #28349MO
4387 Laclede Avenue
St. Louis, Missouri 63108
Telephone:  (314) 534-2800
Facsimile:  (314) 534-0803
E-mail:  mrayamondattorney@sbcglobal.net

Attorney for Plaintiff